FILED
2023 May-15  PM 04:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **Shelby County, Alabama,** | ) | |
| **Talladega County, Alabama,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 1:23-cv-609** |
| | ) | |
| **3M Company, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFFS' MOTION TO REMAND AND SUPPORTING BRIEF

---

Plaintiffs, Shelby County, Alabama and Talladega County, Alabama ("Plaintiffs") move the Court to remand this action to the Circuit Court of Talladega County, Alabama because 3M Company's ("3M") removal is improper. Federal jurisdiction does not exist as there is a lack of complete diversity between Plaintiffs and all Defendants, and 3M fails to prove its alleged fraudulent joinder.

## **DEFENDANTS' BURDEN OF PROOF AND STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction. *Landrum v. Delta Int'l Mach. Corp.*, 2008 U.S. Dist. LEXIS 43561 (M.D. Ala. June 3, 2008); *Kokkohen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994). As such, federal courts may only preside over cases they have been authorized to hear by the Constitution or the

Congress of the United States. *Landrum* at \*3; *Kokkohen*, 511 U.S. at 377. While a defendant has a right to remove in limited situations, "plaintiff is still the master of his own claim." *Burns v. Windsor Ins. Co.,* 31 F. 3d 1092, 1095 (11th Cir. 1994). Rule 20 of the Federal Rules of Civil Procedure permits plaintiffs to join claims against defendants if they assert a right to joint and several relief arising out of the same occurrence and if the claims share any question of law or fact. This rule is to be construed broadly. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

> Placing the burden on the removing defendants and **resolving all doubts in favor of Plaintiffs as against the defendant** is consistent with, if not mandated by, the Constitution and statutory limitations on the exercise of federal judicial power. Allocating the burden in this fashion affirms an organizing tenet of removal jurisprudence; that is, that the statutory right of removal does not outweigh nor even equal the plaintiff's right to pursue their claims in their own manner in the chosen forum.

*Harris v. Mosby's Packing Co*., 05-PWG-595-S, Slip Op. at 5-6 (N.D. Ala. July 1, 2005) (emphasis added).

The party asserting misjoinder has a significant burden in order to prevail:

> To establish fraudulent joinder, 'the removing party has the burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the

plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.' *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). This burden is a 'heavy one.'

*Stillwell v. Allstate Ins. Co.*, 663 F. 3d 1329, 1332 (11th Cir. 2011).

The *Stillwell* Court further observed:

> To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Crowe*, 113 F.3d at 1538. In making this determination, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Id.* 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), superseded by statute on other grounds as stated in *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993). In other words, '[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.' *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

*Stillwell,* 663 F. 3d at 1333.

A judicial determination regarding fraudulent joinder is "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). However, a court should proceed with caution in

looking beyond the pleadings; causation should not be conflated with jurisdiction. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis."). Jurisdictional analysis "must not subsume substantive determination." *Id.* (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A 1981)).

Removing defendants have the heavy burden of proving "there is *no possibility* the plaintiff can establish a cause of action against the resident defendant." *Crowe*, 113 F.3d at 1538 (emphasis added). To determine whether they have met this burden, a court reviews both the legal sufficiency of the complaint as well as the plaintiff's and defendants' factual allegations. *Id*. A defendant must demonstrate by *clear and convincing evidence* that a plaintiff fraudulently joined a resident defendant. *See Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 n.2 (11th Cir. 2007) (emphasis added). In addition to the clear and convincing evidence rule, a removing defendant must also prove that a plaintiff could not possibly state a claim against the resident defendant in state court. *Triggs*, 154 F.3d at 1287. Doubt about a legal issue under state law must also be resolved in favor of remand. *See Crowe*, 113 F.3d at 1538 ("To determine whether the case should be remanded, the

district court . . . must resolve any uncertainties about state substantive law in favor of the plaintiff.").

Conversely, the burden placed on a plaintiff arguing for remand is considerably lighter. He "need not have a winning case . . . for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. Rather, he need only show a "reasonable basis for predicting that the state law might impose liability on the facts involved." *Crowe*, 113 F.3d at 1538 (internal quotation marks omitted). Also, a court must "resolve all questions of fact . . . in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). Through its filings, 3M has essentially asked for summary judgment. From a procedural aspect, however, the Court cannot consider such a request at this time.

But a fact may be sufficiently "disputed" for the purpose of fraudulent joinder even if the same response would not be sufficient to survive summary judgment because, for fraudulent joinder purposes, the plaintiff's burden is simply to offer some evidence to reasonably contest that of the defendants. *See Legg v. Wyeth*, 428.F3d 1317, 1323 (11th Cir. 2005); *see*, *e.g. Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (11th Cir. 2011) (fact was contested for fraudulent joinder analysis when plaintiff "generally contested [defendant's] version of events"). In this manner, defeating a fraudulent joinder motion is a "lighter" burden for the plaintiff than at summary judgment.

## FACTS

Shelby County is a body corporate of the State of Alabama. (Compl., ¶ 19). Talladega County is a body corporate of the State of Alabama. (Compl., ¶ 20). Shelby and Talladega Counties provide drinking water to the citizens of those counties. (Compl., ¶¶ 2-3). In 2022, Shelby and Talladega Counties discovered that their finished water supply was contaminated with PFAS. (Compl., ¶ 90).

PFAS are a class of nearly 12,000 individual synthetic chemicals that do not exist naturally in the environment and are harmful at extremely low levels. (Compl., ¶ 44). PFAS are ubiquitous in consumer products (Compl., ¶ 44), but they are especially prevalent in the carpet and flooring industry, not only in soil and stain resistant application, but in the synthetic fiber carpet is made from. But of the 12,000 plus PFAS compounds known, only 29 can be detected in drinking water, and the presence of PFAS in products is often shrouded in mystery. (Compl., ¶ 45).

Defendants, 3M Company, E.I. du Pont de Nemours and Company, Daikin America, Inc., and Invista ("Manufacturing Defendants") have manufactured and supplied PFAS to carpet and flooring manufacturers. (Compl., ¶ 42). The Manufacturing Defendants have known for decades that PFAS are harmful, do not biodegrade, and can accumulate in the blood of humans. (Compl., ¶¶ 71-87).

Defendants Aladdin Manufacturing Corporation, Aladdin Manufacturing Corporation of Alabama, LLC, Mohawk Carpet, LLC, Mohawk Industries, Inc.,

Auto Custom Carpets, Inc., Shaw Industries, Inc., Shaw Industries Group, Inc., ("the Carpet Defendants") use PFAS and products containing PFAS in various carpet and flooring manufacturing processes. (Compl., ¶¶ 39-40, 43, 47-50). Various carpet manufacturing processes release PFAS into the environment and Plaintiffs' drinking water supply including emissions, leaks, and spills into stormwater drains and sewers which feed into local creeks and streams. (Compl., ¶¶ 40-41, 50-58). PFAS are used to impart soil resistance to carpet, but are also used in fiber lubricators, wetting agents, and defoamers. (Compl., ¶¶ 47-49).

Dalton, Georgia is known as the carpet capital of the world because more that 90% of the world's carpet is produced within a 65-mile radius of Dalton. (Compl., ¶ 38). The Carpet Defendants send their PFAS-laden wastewater to the public sewer system operated by Dalton Utilities and their scrap to the Dalton Industrial Landfill (which sends its PFAS-laden leachate back to Dalton Utilities). (Compl., ¶¶ 8, 40). Dalton Utilities' treatment processes are not capable of removing Defendants' PFAS. (Compl., ¶ 51). Dalton Utilities wastewater treatment process includes spraying treated wastewater onto a 9,800-acre Land Application System ("LAS") where the PFAS contaminates the Conasauga River that borders the LAS. (Compl., ¶¶ 40-41). Defendants have known for decades that their PFAS cannot be removed by Dalton Utilities or other treatment facilities which ultimately reach Talladega and Shelby Counties. (Compl., ¶ 51).

PFAS have been linked to a number of negative health effects in humans. (Compl., ¶¶ 62-64, 67-70). On June 15, 2022, EPA issued new drinking water health advisories for four PFAS. (Compl., ¶ 70). Shelby and Talladega Counties have detected PFAS in their finished drinking water that exceeds EPA's advisory levels. (Compl., ¶ 90).

The Water Works and Sewer Board of Gadsden (a water utility directly upstream from Talladega and Shelby County's treatment facilities) filed an almost identical lawsuit in Alabama state court against many of the same defendants here. In that case, the defendants raised nearly identical arguments seeking removal, specifically that the Alabama resident defendant was fraudulently joined. (Case No. 4:16-1755-KOB, N.D. Ala. 2016). In support, the defendants there submitted affidavits from the president of the Alabama resident defendant stating that his company never used PFAS (like 3M's argument here, through the Howell affidavit). Judge Bowdre rejected that argument and accompanying affidavits as insufficient and remanded the case to state court (*Waters [sic] Works & Sewer Bd. of Gadsden v. 3M Co.*, No. 4:16-CV-1755-KOB, 2017 WL 4236371 (N.D. Ala. Sept. 25, 2017)). Following remand and lengthy discovery, the Alabama resident defendant not only had its motion for summary judgment denied, but eventually settled for a significant amount just prior to trial.

## JOINDER OF ALL DEFENDANTS IS PROPER

Proper joinder of defendants under Rule 20 requires only: (1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact. Fed. R. Civ. P. 20(a). Based on the allegations set out above, Plaintiffs' complaint satisfies both requirements of Rule 20 and joinder of all defendants is proper.

## DIVERSITY JURISDICTION DOES NOT EXIST

Plaintiffs are residents of Alabama. Plaintiffs have stated valid claims under Alabama law against each Defendant. Auto Custom Carpets, Inc. ("ACC") is an Alabama corporation. Diversity jurisdiction, as codified in 28 U.S.C. § 1332, does not exist. Therefore, this Court lacks subject matter jurisdiction and Plaintiffs' Motion to Remand should be granted.

### A. 3M has failed to establish fraudulent joinder by clear and convincing evidence.

3M's sole argument for removal stems from its baseless assertion that "there is no reasonable possibility that Plaintiffs can prove any cause of action against Defendant ACC." (Notice of Removal at ¶ 20). 3M fails to provide clear and convincing evidence to support this allegation. Instead, 3M relies on the Declaration of Ken Howell, ACC's majority shareholder and president. (Doc. 1-4). Howell's

declaration cannot support 3M's heavy burden of establishing fraudulent joinder by clear and convincing evidence.

Howell is currently the president and majority shareholder of ACC. (Doc. 1-4 at ¶ 2). His declaration does not state that he is involved in the manufacturing or disposal processes of ACC's carpet or waste. He states broadly that ACC never used PFAS (Doc. 1-4 at ¶ 5) yet fails to declare how he is knowledgeable regarding the chemical makeup of the products used in ACC's manufacturing processes. (*See* Doc 1-4 at ¶ 2). Howell's declaration does not include any mention, much less citation to, any ACC sales records, disposal records, or technical documents to support this specious claim. Howell's declaration does not indicate that he even reviewed ACC sales records at all. This general, blanket, self-serving statement is woefully insufficient to establish clear and convincing evidence that Plaintiffs could never have a possibility of proving a viable theory of liability against ACC. Given Howell's lack of supporting records, mere guesswork and supposed memory are not sufficient to establish by clear and convincing evidence that Plaintiffs do not have a reasonable possibility of proving a cause of action against ACC in state court. 3M is purportedly conflating a motion for summary judgment with its heavy burden of proving fraudulent joinder.

Similarly, Howell claims that ACC does not discharge wastewater (Doc. 1-4 at ¶ 6-7, 10), yet makes no declaration that he has any knowledge of ACC's

manufacturing process or disposal processes at any point in time. Furthermore, Howell's Declaration makes no attempt to refute Plaintiffs' allegations that ACC has released PFAS by way of emissions, leaks, and spills into stormwater drains and sewers which feed into local creeks and streams. (*See* Compl., ¶ 52). "Allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe*, 113 F.3d at 1539.

Further, according to ACC's Annual Registration with the State of Georgia Secretary of State, ACC's principal office address in Georgia is located at 205 West Main Street, Lafayette, GA. (*See* Ex. A). The Chattooga River, a tributary of the Coosa River, passes directly below and adjacent to this property. (*See* Ex. B); (s*ee also* Compl., ¶ 28). Howell's conclusory statements do not constitute clear and convincing evidence that ACC has never caused environmental releases of PFAS.

Nor does 3M provide clear and convincing evidence that ACC never used any product containing PFAS in any manufacturing process. Plaintiffs contend otherwise, and all facts on remand must be resolved in favor of the Plaintiffs. Therefore, even if Howell's Declaration were credibly dispositive on its face (and it is not), his statements alone (without any supporting documentation whatsoever) fail to establish that PFAS containing products were not used by ACC. A single, self-serving Declaration from a defendant's president and majority shareholder is a far cry from clear and convincing evidence.

11

PFAS have been widely used in carpet manufacturing for decades. (Ex. C at 2-1). PFAS (or PFCs) may be applied to carpets during the manufacturing process for oils, stain, or grease repellency. *Id.* Importantly, PFAS are also used on automotive fabrics such as those manufactured by ACC. (*Id.* at 5-5, 5.7). In fact, automotive carpet is "at the heart" of what ACC does. *See* Ex. D. PFAS are not only used in stain repellant products but are also used as soil repellants, fiber lubricators, wetting agents, and defoamers, (*see* Compl., ¶ 49), none of which are addressed in Howell's Declaration. Plaintiffs have sufficiently challenged Howell's Declaration to create a dispute of fact, therefore the Court should resolve that dispute in favor of Plaintiffs at this point in the litigation. *See Crowe*, 113 F.3d at 1542.

Furthermore, the process of cutting carpet also generates scrap. (Compl., ¶ 8). Scrap from carpet manufacturers is commonly sent to the Dalton Industrial Landfill and other landfills. (*See e.g.,* Ex E). PFAS from this scrap becomes part of the landfill leachate, where it either flows into nearby water sources, or, in the case of Dalton-Whitfield Solid Waste Authority's Old Dixie Landfill, sent to Dalton Utilities and applied to the LAS. (Compl., ¶ 8). Despite Howell's belief that PFAS is not used in ACC's manufacturing process through wet application, he cannot and does not claim knowledge of the PFAS content of the fiber used, which could contribute PFAS to the Coosa River system though stormwater runoff or leachate.

In short, 3M fails to meet its heavy burden of proving by clear and convincing evidence that Plaintiffs never could claim a basis of liability against ACC. The Court should remand this case.

**B. Plaintiffs have stated valid claims against all defendants.**

Under Alabama law:

> In every case involving actionable negligence, there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) A failure by the defendant to perform that duty; and (3) An injury to the plaintiff from such failure of the defendant. When these three elements are brought together, they unitedly constitute actionable negligence.

*Calvert Fire Insurance Co. v. Green*, 180 So.2d 269, 273 (1965).

A nuisance is "anything that works hurt, inconvenience, or damage to another." Ala. Code § 6-5-120. Trespass is an interference with a plaintiff's interest in the exclusive possession of property. *Cox v. Stuart*, 157 So. 458 (Ala. Ct. App. 1933). Wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3).

Because Plaintiffs have plead all elements constituting actionable negligence, nuisance, trespass, and wantonness under Alabama law, there is a substantial likelihood that the Talladega County Circuit Court will find that Plaintiffs have stated viable causes of action against the defendants named in its complaint

including the Alabama resident defendant, ACC. As such, this case is due to be remanded.

## CONCLUSION

In the remand context, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham . . . and is not fraudulent in fact or in law." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (*quoting Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968)).

3M, as the removing party, has the heavy burden of establishing fraudulent joinder by "clear and convincing evidence." *Henderson v. Washington Ins. Co.,* 454 F.3d 1278, 1284 (11th Cir. 2006). 3M must therefore prove either that "there is no possibility that the Plaintiffs would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983). 3M fails on both grounds.

Additionally, there is evidence before the Court that ACC has a real connection to the Plaintiffs' claims. How Plaintiffs' water supply became contaminated with PFAS is a common question of fact among the claims against ACC and the other Defendants. Further, the allegation that ACC used products containing PFAS

14

purchased from other Defendants, resulting in PFAS contaminating the Coosa River, means that the Defendants acted in concert, and would be jointly and severally liable.

For these reasons, diversity jurisdiction does not exist, and this case should be remanded to the Circuit Court of Talladega County, Alabama.

Dated: May 15, 2023

Respectfully submitted,

/s/ Rhon E.  Jones
RHON E.  JONES (JON093)
Rhon.Jones@BeasleyAllen.com
RICHARD D.  STRATTON (STR021)
Rick.Stratton@BeasleyAllen.com
MATT GRIFFITH (GRI085)
Matt.Griffith@BeasleyAllen.com
DAVID L.  DIAB (DIA016)
David.Diab@BeasleyAllen.com
JEFF PRICE (PRI086)
Jeff.Price@BeasleyAllen.com
GAVIN KING (KIN099)
Gavin.King@BeasleyAllen.com
ELIZABETH G. WEYERMAN (WEY001)
Elizabeth.Weyerman@BeasleyAllen.com
Beasley, Allen, Crow,
Methvin, Portis & Miles, P.C.
P.O.  Box 4160
Montgomery, Alabama 36103
T: 334-269-2343
F: 334-954-7555
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this May 15, 2023, the forgoing was electronically filed with the Clerk of Court using the ECF system which will notice all registered parties. All other parties will be served by US Mail, facsimile, or hand delivery.


/s/ Rhon E. Jones_____
Of Counsel