UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **SHELBY COUNTY, ALABAMA, et al.,**<br>     Plaintiffs,<br><br>v.<br><br>**3M COMPANY, et al.,**<br>     Defendants. | Case No. 1:23-cv-609-CLM |

## MEMORANDUM OPINION

Shelby and Talladega Counties sued Defendants 3M Company, E.I. du Pont de Nemours, The Chemours Company, and several carpet manufacturers located near Dalton, Georgia in Alabama state court, alleging that Defendants have contaminated the Counties' water source with toxic chemicals, including per-and poly-fluoroalkyl substances ("PFAS").

3M removed the case to this federal court, arguing that the Counties fraudulently joined Auto Custom Carpets, Inc. ("ACC"), the sole Alabama-resident defendant, to its complaint to ensure federal courts wouldn't have diversity jurisdiction. (Doc. 1). The Counties move to remand the case to state court, arguing that their claims against ACC are viable, so this court lacks jurisdiction. (Doc. 3). For the reasons explained within, the court agrees with the Counties and will thus **GRANT** the motion to remand (doc. 3) and remand this case to state court.

### BACKGROUND

The City of Dalton, Georgia is known as the carpet capital of the world, and there are over 100 carpet manufacturing plants in Dalton and the surrounding communities. (Doc. 1-1 ¶ 38). For decades, these carpet manufacturing plants have used PFAS and related chemicals when making carpet and other flooring. (*Id.*). PFAS from these plants have contaminated the Counties' water source and caused the Counties to incur expenses associated with combating this contamination. (*Id.* ¶¶ 11–12).

A.   **The Complaint**

1. <u>PFAS</u>: PFAS are synthetic chemicals that do not exist naturally in the environment. (*Id.* ¶ 44). Though PFAS are harmful at extremely low levels, they were widely used for decades in consumer, household, and other commercial products, as well as for industrial uses. (*Id.*). PFAS and PFAS-containing products are used to impart soil and stain resistance to carpet. (*Id.* ¶ 47). Fiber lubricators used in the manufacture of nylon fibers and finished yarns are also known to contain PFAS. (*Id.* ¶ 48). And various processes in carpet and flooring manufacturing generate wastewater that contains PFAS. (*Id.* ¶ 50).

2. <u>Carpet manufacturers in Dalton</u>: PFAS containing products such as wetting agents, defoamers, as well as yarn and fiber produced using certain fiber lubricators are still used by carpet mills around Dalton, Georgia. (*Id.* ¶ 49). The carpet manufacturers release PFAS in their industrial wastewater, which is then treated by Dalton Utilities and other wastewater treatment plants. (*Id.* ¶ 40). The carpet manufacturers' solid waste also produces PFAS wastewater in the form of landfill leachate from the Dalton-Whitfield Solid Waste Authority's Old Dixie Landfill, which sends its landfill leachate to the Dalton Utilities' public sewer. (*Id.* ¶ 8). Plus, the carpet manufacturers release PFAS directly into the environment through wastewater, air emissions, and stormwater. (*Id.* ¶ 9).

For decades, the only known method to destroy PFAS was high temperature incineration. (*Id.* ¶ 10). Dalton Utilities wastewater treatment process includes spraying treated wastewater onto a 9,800 Land Application System ("LAS"). (*Id.* ¶ 40). The PFAS resist degradation during this treatment process and increase in concentration as waste accumulates in the LAS, which borders the Conasauga River. (*Id.* ¶ 51). Runoff and groundwater contaminated with PFAS from the LAS pollutes the river as it flows past the LAS. (*Id.*). Using the river, these PFAS ultimately reach Shelby and Talladega Counties, which have found PFAS in their water source that exceed the EPA's advisory levels. (*Id.* ¶¶ 51, 90).

3. <u>ACC</u>: The Counties allege that ACC is one of the carpet manufacturers that has used and continues to use PFAS and products that contain PFAS in its carpet and flooring manufacturing process. (*Id.* ¶ 43). Specifically, the Counties allege that ACC "manufactures automotive flooring and carpets from a production facility in Lafayette, Georgia that borders the Chattooga River, and in Oxford, Alabama in the Coosa watershed. The Chattooga River is a tributary of the Coosa River known to contain PFAS." (*Id.*).

4. <u>Damages</u>: PFAS are toxic to humans and accumulate in the body over time, causing long-term physiologic alterations and damage to the blood, liver, kidneys, immune system, and other organs. (*Id.* ¶ 62). And the Counties' current water filtration systems are not designed for removing or reducing levels of PFAS. (*Id.* ¶ 91). So the Counties allege that the contamination of their water source has caused them to incur expenses associated with the future installation and operation of a filtration system that can remove PFAS from the water; to monitor PFAS contamination levels; to buy water from another water system; to properly dispose of PFAS removed from drinking water; and lost profits and sales. (*Id.* ¶ 103).

—

Based on these allegations, the Counties sue each Defendant, including Alabama-resident ACC, for negligence, public nuisance, private nuisance, trespass, wantonness, and injunctive relief.

B.   **The Howell Declaration**

To support its argument that the Counties have no viable claim against ACC, and thus fraudulently joined ACC, 3M attached to its notice of removal a declaration from Ken Howell, the president and majority shareholder of ACC. (Doc. 1-4). Howell started working for ACC in 1986 as controller and chief financial officer and became president and majority shareholder in 2002. (*Id.* ¶ 2). According to Howell, in these positions he became "knowledgeable of ACC's business operations, activities, locations, records, and organizations at all times since its founding." (*Id.*).

ACC manufactures automotive carpet products, including molded and cut and sewn replacement carpet, floor, and trunk mats, and sound and heat barriers. (*Id.* ¶ 3). To make its products, ACC cuts and molds rolled carpet into various shapes and sizes as needed for its customers. (*Id.*). According to Howell, ACC does not treat, and has never treated, its products with Scotchgard, Stainmaster, or similar stain-resistant substances. (*Id.*). Nor, according to Howell, has ACC ever bought or used carpet treated with Scotchgard, Stainmaster, or similar stain-resistant substances to make its products. (*Id.*). Nor has ACC used any type of PFAS or product containing PFAS in any manufacturing process, and ACC has never bought, acquired, stored, used, or disposed of PFAS or products that contain PFAS. (*Id.* ¶ 5).

According to Howell, ACC does not use and has never used water in any manufacturing process. (*Id.* ¶ 6). ACC does not discharge and has never discharged industrial wastewater into any body of water or treatment plant, including Dalton Utilities. (*Id.*). And ACC does not have and has never had a wastewater discharge permit or an industrial user permit with any wastewater treatment plant. (*Id.*).

Howell also denies that ACC has ever procured PFAS or products containing PFAS from any source, including 3M, DuPont, or another foreign source. (*Id.* ¶ 8). And Howell says that no federal or state agency or department has ever identified wastewater from ACC's manufacturing facilities as a source of PFAS or any other contamination or pollution in any river or water supply. (*Id.* ¶ 9). Plus, Howell denies that ACC has ever released, leaked, spilled, or discharged PFAS or products containing PFAS into any body of water, stormwater drain, sewer, or any property. (*Id.* ¶ 10). Finally, Howell states that ACC has no non-public knowledge or information about PFAS or their alleged risk of harm to the public and has never concealed such knowledge or information from anyone. (*Id.* ¶ 11). In short, "ACC denies any involvement in or responsibility for the alleged contamination by PFAS of Plaintiffs' water supplies, facilities, and property alleged in the Complaint." (*Id.* ¶ 13).

### C.     The Counties' Evidentiary Submissions

To combat Howell's declaration, the Counties submitted five pieces of evidence along with their motion to remand. (Docs. 3-1 to 3-5). The Counties' first piece of evidence shows that ACC's principal office is located at 205 West Main Street, Lafayette, GA. (Doc. 3-1). The Chattooga River, a tributary of the Coosa River, passes near this property. (Doc. 3-2).

The Counties also point to evidence that PFAS have been used in carpet manufacturing for decades and that they may be applied to carpets for oils, stain, or grease repellency. (Doc. 3-3 at 2-1). As the Counties note, automotive carpet is "at the heart" of what ACC does. (Doc. 3-4). And PFAS have been known to be specifically used on automotive fabrics. (Doc. 3-3 at 5-5, 5.7). Plus, scrap from carpet manufacturers around Dalton is commonly sent to the Dalton Industrial Landfill and other landfills. (Doc. 3-5).

### STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Removal is proper when the federal court has subject matter jurisdiction over the case. "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Because removal jurisdiction raises significant federalism concerns, . . . all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Indeed, "[t]o determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

## DISCUSSION

The court's jurisdiction turns on whether the Counties fraudulently joined ACC to destroy diversity. Before answering that question, the court must first explain who has the burden to prove what.

### I. What are the parties' burdens?

1. <u>3M's burden</u>: A removing party alleging fraudulent joinder has the heavy burden of proving by clear and convincing evidence that either "(1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* at 1538.[1] The fraudulent joinder determination "must be based upon the plaintiff's pleading at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). So the procedure for resolving a claim of fraudulent joinder is like that used for ruling on a motion for summary judgment under Rule 56. *Crowe*, 113 F.3d at 1538. And "[w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005).

2. <u>The Counties' burden</u>: Under the above standard, a plaintiff must produce *some* evidence to dispute the defendant's affidavits and transcripts, if the defendant's evidence, left unchecked, would prove fraudulent joinder. Assuming the plaintiff submits his own evidence, the resulting inquiry "must not subsume substantive determination." *Crowe*, 113 F.3d at 1538. "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* And any "doubt with respect to the allegations

---

[1] Misjoinder is a third potential ground for finding fraudulent joinder, *see Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998), but that ground for fraudulent joinder isn't relevant here.

concerning the resident defendants being false as *when the question depends upon the credibility of witnesses* or the weight of the evidence will not render the joinder fraudulent." *Parks v. New York Times Co.*, 308 F.2d 474, 477 (5th Cir. 1962) (emphasis added).

Nor does a plaintiff seeking remand need to show that he could survive a motion for summary judgment by the in-state defendant. *Crowe*, 113 F.3d at 1541. "[T]he plaintiff's burden is much lighter than that." *Id.* The plaintiff must "generally contest" the defendants' version of events and provide "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 892 (11th Cir. 2011) (quoting *Crowe*, 113 F.3d at 1541).

## II. Have the Counties possibly stated a claim against ACC under Alabama law?

With that, the court turns to the question at hand: Is it possible that a state court *could* find ACC liable to the Counties? 3M says that Howell's declaration forecloses this possibility. The court disagrees for two reasons.

1. <u>Posture of the case</u>: First, at this stage, the Counties aren't required to submit evidence that directly rebuts the statements in Howell's declaration. *See id.* They instead must just provide the court with "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Crowe*, 113 F.3d at 1541. And it's 3M's "heavy burden" to show that Howell's declaration amounts to clear and convincing evidence that ACC was fraudulently joined. *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).

The court is unconvinced that the Howell declaration provides clear evidence that the Counties have no possibility of recovering against ACC. Howell's declaration is based on his knowledge "of ACC's business operations, activities, locations, records, and organization at all times since its founding." (Doc. 1-4 ¶ 2). But Howell doesn't describe the records he relied on in support of his testimony or explain how those records established that ACC never used any product containing PFAS. As a result, the accuracy of Howell's declaration depends on his credibility. Given Howell's interest in having this court issue an order finding that there's no possibility that ACC is liable to

the Counties, the court cannot say that his five-page declaration alone establishes that ACC was fraudulently joined. *See Parks*, 308 F.2d at 477.

Plus, the Counties have pointed to several holes in Howell's declaration that might cause a state court to find that the declaration doesn't disprove ACC's liability. For example, Howell doesn't explain how he knows of the 12,000 different PFAS compounds that could have been used by ACC during the 46 years of the company's existence. Nor is the chemical makeup of products likely something that can be rationally based on the perception of a lay witness like Howell. *See* Ala. R. Evid. 701. So the court cannot find that Howell's declaration—which, at this point, amounts to testimony that has yet to be subject to cross-examination—is clear and convincing evidence that forecloses the possibility that a state court could rule that ACC is possibly liable to the Counties.

2. The Counties' submissions: Second, though perhaps not enough evidence to survive summary judgment, the Counties have submitted evidence that provides a reasonable basis for concluding that it's possible that ACC is liable to the Counties. 3M doesn't dispute that the Counties' water source has been contaminated with PFAS or that PFAS are common in the carpet manufacturing process. PFAS are also known to be used on automotive fabrics, which is "at the heart" of what ACC does. (Doc. 3-4). And the Counties have shown both that ACC's principal office is near Dalton and that scrap from carpet manufacturers is commonly sent to landfills, such as the Dalton Industrial Landfill. PFAS found in this scrap becoming landfill leachate that migrated into the Counties' water source would be consistent with the allegations in the Counties' complaint. (Doc. 1-1 ¶ 8).

The court cannot know whether discovery will reveal that ACC is one of the sources of the PFAS in the Counties' water. And 3M may be right that ACC has never used PFAS in the carpet manufacturing process. But based on ACC's location, the prevalence of PFAS in the carpet manufacturing business, and the Counties' theory of how PFAS ended up in their water supply, it's at least plausible that ACC contributed to the Counties' harm. That's especially true given the possibility that the state court could find Howell's declaration "self-serving and designed to avoid liability." *See Alred v. Preferred Compounding Corp.*, Case No. 1:19-cv-1563-CLM, 2020 WL 429386,

at *7 (N.D. Ala. Jan. 28, 2020). So the court finds that the Counties had a non-fraudulent reason to include ACC as a defendant in their complaint.

—

This ruling aligns with Judge Bowdre's rulings in *The Water Works and Sewer Bd. of Gadsden v. 3M Co.*, Case No. 4:16-cv-1755-KOB, 2017 WL 423671 (N.D. Ala. Sept. 25, 2017) and *The Water Works and Sewer Bd. of Town of Centre v. 3M Co.*, Case No. 4:17-cv-1026-KOB, 2017 WL 5153568 (N.D. Ala. Nov. 7, 2017), cases that similarly featured claims that chemicals from carpet manufacturers near Dalton had contaminated drinking water supplies. After finding the defendants' affidavits insufficient to establish fraudulent joinder, Judge Bowdre noted "[t]he Board is entitled to rely on circumstantial evidence and inductive reasoning at this point; it is only required to generally contest, not specifically refute, the Defendants' version of events." *Gadsden*, 2017 WL 423671, at *7. The same is true here, so the court similarly finds that the Counties' evidence sufficiently contests 3M's evidence and creates a possibility that a state court could find ACC liable.

## CONCLUSION

For these reasons, the court finds that the Counties did not fraudulently join ACC. As a result, the court lacks diversity jurisdiction because complete diversity does not exist among the parties. So the court will **GRANT** the Counties' motion to remand (doc. 3) and will remand this case to the Circuit Court of Talladega County, Alabama. The court will enter a separate order that carries out this ruling.

**Done** on February 5, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE